IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ASF GLOBAL, LLC, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | CIVIL ACTION: 1:22-00145-KD-M |
| SOFT-TEX INTERNATIONAL, INC., ) | |
|     Defendant. ) | |

**ORDER**

This matter is before the Court on Plaintiff's "Notice Regarding Clerk's Entry of Default and Pending Motion for default judgment" (Doc. 20) and the Clerk's default against the Defendant (Doc. 19) (as supported by Plaintiff's (second) Application for Default (Doc. 16)).[1]

**I.      Background**

**A.      The Previously Dismissed Action - The Underlying Action CV 1:22-00048-KD-B**

On February 4, 2022, Plaintiff ASF Global, LLC (ASF)[2] filed a civil action against Soft-Tex International, Inc. (Soft-Tex)[3] in this Court under Rule 9(h) of the Fed.R.Civ.P. (in Admiralty)

---

[1] In its "Notice," ASF incorrectly suggests that the first Motion for Default Judgment (Doc. 11) remains pending and is now "ripe to be decided" given the Clerk's entry of Default against Soft-Tex and because its Amended Application for Default has been granted. (Doc. 20). The second Application for Default (not Amended) was granted and such provided the basis for the Clerk's Entry of Default against Soft-Tex; however, the first Motion for Default Judgment was ordered moot on June 9, 2022 such that it is no longer pending. (Doc. 13 at 4). Nevertheless, the Court construes ASF's Notice (Doc. 20) as encompassing the recent assertions in support of its second Application for Default (Doc. 16) and, as applicable, the relevant assertions contained in, and exhibits attached to, its first Motion for Default Judgment (Doc. 11) -- treating the Notice as ASF's Second Motion for Default Judgment.

[2] Plaintiff ASF Global, LLC (ASF) is an Alabama limited liability company and non-vessel-operating common carrier specializing in supply chain management, including the shipping and related transportation of goods from port-to-port and port-to-customer, in Mobile, Alabama. (Doc. 1 at 1-2).

[3] Defendant Soft-Tex International, Inc. (Soft-Tex) is a New York corporation with its principal place of business in Albany County, New York, which manufactures and markets an assortment of bedding and home comfort products globally. (Doc. 1 at 1-2).

1

alleging claims for breach of contract (in personam), quantum meruit (in personam), suit on verified account (Ala. Code § 12-21-111) (in personam),[4] and account stated (in personam). (Doc. 1 -- CV 1:22-00048-KD-B). These claims stemmed from a contract through which ASF agreed to provide ocean and related transportation services for Soft-Tex's goods which are manufactured overseas and Soft-Tex agreed to pay ASF freight charges, fees, storage charges, per diem charges, demurrage, chassis charges, and other charges associated with those shipments) (a transportation of goods/services contract). (Doc. 1 at 2). ASF alleged further that, as part of that contract:

> ... Soft-Tex executed ASF's Credit Application Terms and Conditions (the Credit Terms) agreeing to abide by those terms in conjunction with ASF allowing Soft-Tex to pay for shipments on certain terms. ASF's Credit Terms also adopt and incorporate ASF's Standard Terms and Conditions, which include ASF's International Terms and Conditions.
>
> Pursuant to the Credit Terms, ASF allowed Soft-Tex to pay for shipment of its goods after their estimated time of arrival in port. Initially, ASF offered Soft-Tex a credit term of net 15 days from the estimated time of arrival of Soft-Tex's goods in port (net 15). At Soft-Tex's request, on September 18, 2020, ASF extended Soft-Tex's credit term to net 30 days from the estimated time of arrival in port ("net 30"). Due to Soft-Tex's failure to make payments on time, on September 14, 2021, ASF reduced the credit term to net 15. On January 13, 2022, at Soft-Tex's request and in an effort to work with Soft-Tex's cash flow issues, ASF again extended the credit term to net 30 provided that Soft-Tex made payment of all invoices outside the 30-day term. Soft-Tex failed to make the required payment.
>
> ... [then from that date through February 2022] ... Soft-Tex failed to pay ASF substantial amounts owed in connection with ASF's shipment of containers of goods for Soft-Tex from China to the United States. ASF is now in the position of having to hold and store many containers (and in some cases the chassis as well) and exercise its maritime lien rights to protect its right to receive payment. If payment is not made, storage and other related charges for these shipments are going to continue to accrue. At some point, ASF may have no choice but to exercise its right to sell the goods at public or private sale or auction as authorized by the International Terms and Conditions.

---

[4] The Complaint referenced an itemized statement showing the outstanding balance owed by Soft-Tex as "Exhibit A" to the Complaint (Doc. 1 at 5 - CV 1:22-00048-KD-B); no such exhibit was filed.

> Under the parties' agreement, Soft-Tex is responsible for any and all penalties and late fees arising out of or related in any way to its untimely payment; all reasonable costs incurred in collecting any late payments or enforcing the terms of its agreement, including but not limited to reasonable attorney's fees and court costs; and 25% interest per annum on all outstanding charges.
>
> ASF also issued Bills of Lading to Soft-Tex for the cargo associated with each shipment. In accepting the Bills of Lading for its goods, Soft-Tex agreed to the terms thereof. Under the Bills of Lading, Soft-Tex is liable for and must indemnify ASF against all dues, duties, taxes, consular fees, and other charges levied on the goods, and all fines, damages, and losses sustained by ASF in connection with the goods.
>
> As of February 3, 2022, Soft-Tex owed ASF $1,246,397.23 plus interest at the rate of 25% *per annum* and storage, chassis, and other charges for Soft-Tex's goods currently in ASF's possession, custody or control, or enroute.
>
> ASF has demanded payment from Soft-Tex, and Soft-Tex has failed or refused to pay the outstanding balance owed.

(Doc. 1 at 1-4 -- cv 1:22-00048-KD-B).

On February 28, 2022, ASF filed a Fed.R.Civ.P. Rule 41(a)(1)(A)(i) Notice of Dismissal to dismiss the action without prejudice.  (Doc. 7 -- CV 1:22-00048-KD-B).  The parties had settled the case and executed a Payment Agreement agreeing, in relevant part, as follows:

> 1. ASF will dismiss the Lawsuit without prejudice upon receipt of $300,000.00 ....
>
> 2. Soft-Tex further agrees to make $300,000.00 weekly payments to ASF beginning the week after the Initial Payment, with said weekly payments to be made on or before 5:00 pm CST on the Thursday of each week, with the next payment being received by March 10, 2022, and to continue weekly thereafter until the outstanding balance for all unpaid shipments and associated demurrage/chassis/storage charges and fees or related charges, excluding 25% interest and attorney's fees, is satisfied in full.
>
> 3. If Soft-Tex fails to make any required payment to ASF under this Payment Agreement prior to the full outstanding balance being satisfied, Soft-Tex agrees to reinstatement of ASF's Lawsuit in the federal district court in the Southern District of Alabama; Soft-Tex agrees to waive service of process and will accept immediate service of the re-filed Lawsuit; and, Soft-Tex agrees to waive all defenses and

> confess to an immediate judgment in favor of ASF for the total outstanding balance owed (including all charges, attorney's fees, 25% interest, etc.).

(Doc. 11-4). On March 3, 2022, the case was dismissed without prejudice under Fed.R.Civ.P. Rule 41(a)(1)A)(i). (Doc. 8 -- CV 1:22-00048-KD-B).

**B.      The Current Action CV 1:22-00145-KD-M**

On April 6, 2022 ASF initiated this action under Rule 9(h) of the Fed.R.Civ.P. (in Admiralty) against Soft-Tex alleging that Soft-Tex breached the settlement reached between the parties to resolve CV 1:22-00048-KD-B which had been dismissed without prejudice per settlement (the underlying action). (Doc. 1). Additionally, ASF realleged the same claims previously alleged in CV 1:22-cv-00048-KD-B. (Id.) Specifically, ASF alleges that:

> ASF agreed to provide ocean and related transportation services for Soft-Tex's goods which are manufactured overseas. In exchange, Soft-Tex agreed to pay ASF freight charges, fees, storage charges, *per diem* charges, demurrage, chassis charges, and other charges associated with those shipments.
>
> As part of the contract with ASF, Soft-Tex executed ASF's Credit Application Terms and Conditions (Credit Terms), agreeing to abide by those terms in conjunction with ASF allowing Soft-Tex to pay for shipments on certain terms. ASF's Credit Terms adopt and incorporate ASF's Standard Terms and Conditions, which include ASF's International Terms and Conditions.
>
> Pursuant to the Credit Terms, ASF allowed Soft-Tex to pay for shipment of its goods after their estimated time of arrival in port. Initially, ASF offered Soft-Tex a credit term of net 15 days from the estimated time of arrival of Soft-Tex's goods in port ("net 15"). At Soft-Tex's request, on September 18, 2020, ASF extended Soft-Tex's credit term to net 30 days from the estimated time of arrival in port ("net 30"). Due to Soft-Tex's failure to make payments on time, on September 14, 2021, ASF reduced the credit term to net 15. On January 13, 2022, at Soft-Tex's request and in an effort to work with Soft-Tex's cash flow issues, ASF again extended the credit term to net 30 provided that Soft-Tex made payment of all invoices outside the 30-day term. Soft-Tex failed to make the required payment.
>
> In late 2021 and early 2022, Soft-Tex failed to pay ASF substantial amounts owed in connection with ASF's shipment of containers of goods for Soft-Tex from China to the United States.

4

ASF also issued Bills of Lading to Soft-Tex for the cargo associated with each shipment. In accepting the Bills of Lading for its goods, Soft-Tex agreed to the terms thereof. Under the Bills of Lading, Soft-Tex is liable for and must indemnify ASF against all dues, duties, taxes, consular fees, and other charges levied on the goods, and all fines, damages, and losses sustained by ASF in connection with the goods.

As of February 3, 2022, Soft-Tex owed ASF $1,246,397.23 plus interest at the rate of 25% per annum and storage, chassis, and other charges for Soft-Tex's goods currently in ASF's possession, custody or control, or enroute.

ASF demanded payment from Soft-Tex, and Soft-Tex failed or refused to pay.

On February 4, 2022, ASF filed a civil action against Soft-Tex in this Court.

.. Soft-Tex represented that it was able to begin making weekly payments on its outstanding balance.

...ASF and Soft-Tex then entered into a Payment Agreement (the "Payment Agreement") whereby Soft-Tex would make an initial payment followed by weekly payments of $300,000.00 on the Thursday of each week until its outstanding balance was satisfied.

Pursuant to the Payment Agreement, ASF and Soft-Tex agreed that the [cv 1:22-00048-KD-B] lawsuit would be dismissed with prejudice, but if Soft-Tex failed to make any payment required under the Payment Agreement, ASF's lawsuit would be reinstated in this Court, Soft-Tex would waive service of process and accept immediate service of the lawsuit, and Soft-Tex would waive all defenses and confess to an immediate judgment in favor of ASF for the total outstanding balance owed, including all charges, attorney's fees, and interest (at the rate of 25% per annum). ASF and Soft-Tex further agreed that all other terms and conditions of their agreement would remain in full force and effect. ASF dismissed the initial lawsuit without prejudice and Soft-Tex made certain payments under the Payment Agreement.

... Soft-Tex breached the Payment Agreement by failing to make the $300,000.00 payment that was due on Thursday, March 31, 2022.

... ASF has demanded payment, and Soft-Tex has failed or refused to make payment.

> ... As of March 31, 2022, Soft-Tex's outstanding balance, exclusive of interest, attorney's fees, and shipments that had not yet been invoiced as of that date, was $1,221,359.
>
> ... Soft-Tex's failure to pay placed ASF in the position of having to hold and store many containers (and in some cases the chassis as well) and exercise its maritime lien rights to protect its right to receive payment. Storage and other related charges for these shipments accrue and are owed by Soft-Tex to ASF. At some point, ASF may have no choice but to exercise its right to sell the goods at public or private sale or auction as authorized by the International Terms and Conditions.
>
> ... Under the parties' agreement, Soft-Tex is responsible for any and all penalties and late fees arising out of or related in any way to its untimely payment; all reasonable costs incurred in collecting any late payments or enforcing the terms of its agreement, including but not limited to reasonable attorney's fees and court costs; and 25% interest per annum on all outstanding charges.

(Doc. 1 at 2-5 (emphasis added)).[5]

On May 3, 2022, the Summons was returned as executed on April 14, 2022 via certified mail as issued to "Soft-Tex International, Inc. c/o Mark Smiderle, 428 Hudson River Road, Waterford, NY 12188" and signed for by "Kim Briell." (Doc. 5). On June 6, 2022 ASF filed an Application for Default and Motion for Default Judgment (Docs. 10, 11). In the Order denying ASF's Application and mooting the Motion, the Court explained, in part, as follows:

> The record does not support the conclusion that the Defendant has been effectively served with the Summons and Complaint. Rather, the record reveals that Plaintiff prepared a Summons for this Court to serve the Defendant corporation via certified mail with service to Soft-Tex International, Inc. c/o Mark Smiderle, 428 Hudson River Road, Waterford, NY 12188. That Summons issued. However, there is no record of Mark Smiderle personally receiving the Summons and Complaint. Instead, the executed Summons indicates that an unknown individual, Kim Briell, signed the certified mail return receipt card. Plaintiff provides no information as to whether Kim Briell is an agent authorized by Smiderle (CEO of Soft-Tex) to receive and deliver mail to the addressee. Most notably, Briell did not check "agent." Accordingly, there is insufficient evidence that service has been properly perfected on the Defendant.

---

5 The Court presumes the "with prejudice" reference in the Complaint is simply a typographical error as the other case was dismissed without prejudice, based on ASF's request for such, and the Payment Agreement states that ASF will dismiss that case without prejudice. (Doc. 1; Doc. 11-4).

6

(Doc. 13). On June 10, 2022, ASF filed a second Application for Default (Doc. 16), and explained that Smiderle is Soft-Tex's Chief Executive Officer at Soft-Tex's corporate headquarters in Waterford, New York and Briell is "authorized by Mr. Smiderle to receive his mail and deliver it to him." (Doc. 16 at 1-2). Based on the foregoing, ASF asserted that Soft-Tex has been properly served "by service on its Chief Executive Officer's agent for receiving his mail and delivering it to him[]" based on Alabama Rule of Civil Procedure Rule 4(c)(6) and 4(i)(2)(C). (Id. at 2). On June 16, 2022, the Court granted ASF's second Application for Default. (Doc. 18). On June 17, 2022, ASF issued an alias summons to Soft-Tex. (Doc. 17). On June 16, 2022, the Clerk entered a Default against Soft-Tex. (Doc. 19).

On July 1, 2022, ASF filed a Notice which the Court has construed as a second motion for default judgment. (Doc. 20). ASF seeks **$1,611,075.06** plus all amounts that Soft-Tex "failed to pay after March 31, 2022, plus fees and charges associated with Soft-Tex's goods, pre- and post-judgment interest in the amount of 25% per annum, and all costs of collection, including but not limited to ASF's reasonable attorneys' fees." (Doc. 11-1 at 3 (Decltn. Schock); Doc. 1 at 5-7)).

## II.     **Defaults and Default Judgments**

The Federal Rules of Civil Procedure establish a two-part process for obtaining a default judgment. Fed.R.Civ.P. 55. If "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed.R.Civ.P. 55(a). However, a defendant is under no obligation to plead or otherwise defend until and unless it is "served with the summons and complaint." Id. Rule 12(a)(1)(A); *accord* Securities and Exchange Commission v. Wright, 261 Fed. Appx. 259, 261 (11th Cir. 2008). Thus, "b]efore a default can be entered...the party must have

been effectively served with process." 10 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2682 at 14 (3rd ed.1998). Only thereafter, may a court enter a default judgment against a defendant whom default has been entered, per Rule 55(b)(2). After default has been entered, if the "claim is for a sum certain or a sum that can be made certain by computation" the clerk must enter default judgment. Fed.R.Civ.P. 55(b)(1). In all other circumstances, such as here, "the party must apply to the court for a default judgment." Fed.R.Civ.P. 55(b)(2).

Whether to grant a default judgment is "discretionary" and is subject to review for abuse of discretion. Owens v. Benton, 190 Fed. Appx. 762, 763 (11th Cir. 2006). In the Eleventh Circuit default judgments are disfavored. Surtain v. Hamlin Terrace Foundation, 789 F.3d 1239, 1244-1245 (11th Cir. 2015) (explaining that entry of a default judgment is warranted only if there is a sufficient basis in the pleadings for judgment to be entered -- "akin to that necessary to survive a motion to dismiss for failure to state a claim[]"); Gaffney v. Warden, Taylor Corr. Inst., 2022 WL 18381, *2 (11th Cir. Jan. 3, 2022) (*per curiam*) ("there is a 'strong policy of determining cases on their merits' and, therefore, 'default judgments are generally disfavored.' *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244–45 (11th Cir. 2015) (quoting *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003))[]"). "Courts prefer adjudication on the merits." Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. and Canada, 674 F.2d 1365, 1369 (11th Cir. 1982). "Entry of judgment by default is a drastic remedy which should be used only in extreme situations, as the court has available to it a wide range of lesser sanctions." Wahl v. McIver, 773 F.2d 1169, 1174 (11th Cir. 1985). There is a "strong preference that cases be heard on the merits" instead of imposing "sanctions that deprive a litigant of his day in court." Id.

Moreover, while "a default is not treated as an absolute confession by a defendant of his liability and of the plaintiff's right to recover, a defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact[;]" however, the defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." Tyco Fire & Sec., LLC v. Alcocer, 218 Fed. Appx. 860, 863 (11th Cir. 2007) (*per curiam*) (citations and internal quotations omitted). This means that "before entering a default judgment for damages, the district court must ensure that the well-pleaded allegations of the complaint ... actually state a cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." Id. (emphasis omitted). Thus, a plaintiff must establish a "prima facie liability case" against the defaulting defendant. Pitts v. Seneca Sports, Inc., 321 F.Supp.2d 1353, 1357 (S.D. Ga. 2004) (citations omitted). And the Court has "an obligation to assure that there is a legitimate basis for any damage award it enters." Anheuser Busch, Inc. v. *Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). "[A]llegations relating to the amount of damages are not admitted by virtue of default ... the Court determines the amount and character of damages to be awarded." Miller v. Paradise of Port Richey, Inc., 75 F.Supp.2d 1342, 1346 (M.D. Fla. 1999).

A.   **Threshold issues**

The Court is satisfied that Plaintiff has notified Soft-Tex of the default proceedings against it via placing a copy of the Second Application for Entry of Default, as well as a copy of the Second Motion for Default Judgment, in the mail to the company at the address of record (428 Hudson River Road, Waterford, NY, 12188). (Doc. 16 at 4; Doc. 20 at 2). Additionally, the record confirms a Clerk's Rule 55(a) default was entered against Soft-Tex for its failure to timely plead, answer, or otherwise defend. (Doc. 19).

And it is clear that Soft-Tex is not an infant, incompetent person, or person in military service or otherwise exempted. See, e.g., Branch Banking and Trust, Company v. Natures Way Commander, 2018 WL 3326853, *1 (S.D. Ala. Jan. 23, 2018) (" ... as to any civil action in which the defendant does not make an appearance, 'the court, before entering judgment for the plaintiff, shall require the plaintiff to file with the court an affidavit' addressing the defendant's military status. 50 U.S.C. app. § 521(a), (b). Because Natures Way Marine, LLC is a limited liability company, it cannot be a minor, an incompetent, or a member of the armed forces[]") (internal citation omitted); PNC Bank, Nat. Ass'n v. Cahaba Furniture, LLC, 2014 WL 4053510, *2 (S.D. Ala. Aug. 15, 2014) ([b]ecause Defendant is a limited liability company, it cannot be a minor, incompetent, or serve in the military. Accordingly, there is no need for such averment ... []"); GlobeNet Metals, LLC v. Fidelity Oil Field Services, LLC, 2013 WL 5529607, *1 (S.D. Ala. Oct. 7, 2013) ("[b]ecause the only defendant is a limited liability company, it is neither a minor, an incompetent or a member of the armed forces[]" (citing cases)).

This leaves jurisdiction. ASF has filed this case based on original jurisdiction (admiralty/maritime per Fed.R.Civ.P. Rule 9(h)) (28 U.S.C. § 1333) and diversity jurisdiction per 28 U.S.C. § 1332.⁶ The record indicates that both exist. The claims sound in admiralty because they are rooted in an ocean transportation of goods/services contract and shipments related to same. Complete diversity exists as ASF is an LLC with Alabama citizens as its members, Soft-Tex is a corporation with New York citizenship, and the amount in controversy exceeds $75,000. And personal jurisdiction exists due to the parties' contractual agreement to consent to same in the SDAL and providing that any action relating to services provided by ASF to Soft-Tex may be

brought in the SDAL as part of the settlement of the underlying action. Baragona v. Kuwait Gulf Link Transp. Co., 594 F.3d 852, 855 (11th Cir. 2010).

B.  *Prima Facie* **Liability**

As grounds for entry of a default judgment, ASF points to the Clerk's entry of Default against Soft-Tex and argues that Soft-Tex has admitted all of the allegations in the Complaint. The Court may enter a default judgment only if the well-pleaded factual allegations of fact of the complaint provide a sufficient legal basis for the alleged violations. Nishimatsu Const. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)[7] ("[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law[ ]"). Courts must "examine the sufficiency of plaintiff's allegations to determine whether the plaintiff is entitled to" a default judgment. Fidelity & Deposit Co. of Md. v. Williams, 699 F. Supp. 897, 899 (N.D. Ga. 1988).

1.  **Payment Agreement**

In the Complaint, ASF asserts a claim for breach of the Payment Agreement. (Doc. 1 at 4-5, 7). However, when a case is dismissed without prejudice under Rule 41 based on a settlement and a party later breaches that settlement -- as has allegedly occurred here -- a party typically has two (2) options: 1) pursue breach of the settlement (a breach of contract action); or 2) refile the federal case, so long as jurisdiction is established, based on its original claim from the dismissed without prejudice case. It is an "established principle" that "one who agrees to settle his claim cannot subsequently seek both the benefit of the settlement and the opportunity to continue to press the claim he agreed to settle." Kirby v. Dole, 736 F.2d 661, 663–664 (11th Cir. 1984) (citations

---

7 In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

11

omitted). "Reinstatement of ... [a] complaint is ...[the] only remedy for the ... breach of the settlement agreement .... This result is mandated ... by the established principle that one who agrees to settle his claim cannot subsequently seek both the benefit of the settlement and the opportunity to continue to press the claim he agreed to settle[]"). Kirby v. Dole, 736 F.2d 661, 663-664 (11th Cir. 1984). See also Seeong Ho Hwang v. Gladden, 2018 WL 3059871, *6-7 (M.D. Ala. Jun. 20, 2018). "The 'general principle' and its application in *Kirby* is fatal to plaintiff['s] motion to enforce" the settlement agreement. Id. at *6. In sum, ASF is limited to suing on the original breach of contract claim or pursuing breach of the settlement agreement. It appears from the payment agreement that the parties intended that the latter would be the remedy. The breach of payment agreement claim is **DISMISSED**.

    **2.**    *__Quantum meruit__* (in personam)

As alleged in the Complaint, ASF asserts that per the transportation of goods/services contract, it "performed ocean transportation services and incurred costs and expenses, including storage, care, carriage and delivery, for the benefit of Soft-Tex. ASF is entitled to be paid for the reasonable value of its services, costs, and expenses." (Doc. 1 at 6). On default judgment, ASF fails to explain this claim further, set forth the elements for same, or cite any case law in support.

Presumably, given the allegation, ASF's *quantum meruit* claim is based on the transportation of goods/services contract -- which, as described, appears to be an *express* contract. If so, case law clearly provides that ASF's claim is not cognizable Alabama law and the Eleventh Circuit routinely and consistently hold that when an express contract exists, quasi-contract claims such as *quantum meruit* (an implied contract) fail, as simultaneous recovery for these claims cannot coexist. See, e.g., Old Town II, LLC v. Oppidan Hldgs, LLC, 2021 WL 2586813, *15-16 (N.D.

Ala. Mar. 8, 2021) (listing many cases for this holding); Branch Banking & Trust Co. v. Howard, 2013 WL 951652, *6 (S.D. Ala. Mar. 8, 2013) (" ... authorities make clear that, as a matter of Alabama law, a plaintiff cannot recover both under a quasi-contract theory (i.e., unjust enrichment, quantum meruit, money had and received) as a matter of equity and under an express contract theory covering the same subject matter. The existence of express, enforceable contracts governing the parties' relationship negates ... quasi-contractual claims for recovery of the same money, as a matter of law[]").[8] As noted in Prince v. Huliau, 2022 WL 2677478, *3 (N.D. Ala. Jul. 11, 2022):

> In Alabama, an express contract subsumes quasi-contract claims for relief. "[W]hen an express contract exists, an argument based on a quantum meruit recovery in regard to an implied contract fails. The existence of an express contract on a given subject generally excludes an implied agreement on the same subject." *Mantiply v. Mantiply*, 951 So. 2d 638, 656 (Ala. 2006) (cleaned up). Simply, the two cannot co-exist. *Blackmon v. Renasant Bank*, 232 So. 3d 224, 228 n.4 (Ala. 2017) ("[Plaintiff]'s unjust-enrichment claim ... and its breach-of-contract claim ... which are based on the same facts and contract are mutually exclusive.").
>
> Federal courts applying Alabama law routinely and consistently find that unjust enrichment is not cognizable when there is an express contract between the parties. See *Branch Banking & Tr. Co. v. Howard*, 2013 WL 951652, at *6 (S.D. Ala. Mar. 08, 2013) ("Alabama law is clear that quasi-contractual equitable remedies such as unjust enrichment are not cognizable in the presence of an express contract between the parties that governs the same subject matter."); *Univalor Tr., SA v. Columbia Petroleum, LLC*, 315 F.R.D. 374, 382 (S.D. Ala. 2016) ("[T]he existence of an express contract extinguishes an unjust enrichment claim altogether because unjust enrichment is an equitable remedy which issues only where there is no adequate remedy at law."). Thus, Alabama law is clear that when there is an express contract, unjust enrichment is unavailable.

See also Alabama Space Science Exhibit Commn, v. Markel Am. Ins. Co., 2022 WL 1667904, *3 (11th Cir. May 25, 2022) ("an express contract exists, an argument based on a quantum meruit

---

[8] See, e.g., Lemoine Co. of Alabama, L.L.C. v. HLH Constructors, Inc., 62 So.3d 1020, 1028 (Ala. 2010) ("when an express contract exists, an argument based on a quantum meruit recovery in regard to an implied contract fails[]") (citations and internal marks omitted); Kennedy v. Polar–BEK & Baker Wildwood Partnership, 682 So.2d 443, 447 (Ala. 1996) ("where an express contract exists between two parties, the law generally will not recognize an implied contract regarding the same subject matter[])

recovery in regard to an implied contract fails" as a matter of Alabama law[]") (citations omitted) and 557 F.Supp.3d 1199 (N.D. Ala. 2021) ("'courts routinely dismiss claims for quantum meruit recovery based upon unjust enrichment when an express contract indisputably exists vis-à-vis the same subject matter.' *Old Town II, LLC v. Oppidan Holdings, LLC*, 2021 WL 2586813, at *16 (N.D. Ala. Mar. 8, 2021) (collecting authorities); *see also id.* (quoting *Univalor Trust, SA v. Columbia Petroleum, LLC*, 315 F.R.D. 374, 382 (S.D. Ala. 2016): '[T]he existence of an express contract extinguishes an unjust enrichment claim altogether because unjust enrichment is an equitable remedy which issues only where there is no adequate remedy at law[]'").[9]  Thus, ASF's second motion for default judgment as to this claim is **DENIED.**

      3.      **<u>Suit on verified account</u>** (<u>Ala</u>. <u>Code</u> § 12-21-111) (in personam)

As alleged in the Complaint, "[p]ursuant to the request of Soft-Tex and on the credit of Soft-Tex, ASF provided services and paid costs and expenses necessary for the transportation of Soft-Tex's goods .. [but] [d]espite due demand, Soft-Tex has failed to pay the amounts owed to ASF." (Doc. 1 at 6).  From this, ASF has specifically asserted an <u>Ala</u>. <u>Code</u> § 12-21-111 claim against Soft-Tex for suit on a verified account based on the transportation of goods/services contract. On default judgment, however, ASF fails to explain this claim, set forth the elements for same, cite any case law in support, or submit sufficient evidence establishing Soft-Tex's liability on the relevant contract.

---

      9 "However, 'a plaintiff may sustain a claim for quantum meruit recovery based upon unjust enrichment when the existence of an express contract on the same subject matter remains inconclusive.' *Old Town II, LLC*, 2021 WL 2586813, at *17 (N.D. Ala. Mar. 8, 2021) (collecting authorities). That inconclusiveness is absent here." <u>Alabama Space Science Ex. Commn</u>, 557 F.Supp.3d at 1211.

As alleged ASF seeks to recover amounts owed by Soft-Tex pursuant to a transportation of goods/services contract.  ASF has failed to satisfy the requirements of Ala. Code § 12-21-111 to support Soft-Tex's *prima facie* liability on this claim.

Section 12-21-111 provides as follows:

> In all actions upon accounts, **an itemized statement of the account, verified by the affidavit of a competent witness, taken before and certified by, a notary public or any officer having authority under the laws of this or another state to take and certify affidavits**, is competent evidence of the correctness of the account if the plaintiff, at the time of bringing his action, **files with his complaint such verified itemized statement and endorses on the complaint the fact that the account is verified by affidavit.** …

Ala. Code § 12-21-111 (emphasis added).

In support of its motion, ASF has filed a statement which it asserts is Soft-Tex's outstanding balance (including legal fees and interest) as of June 6, 2022 (Doc. 11-5 at 1-4) and submitted an unnotarized Declaration of Jeffrey T. Schock (ASF's CFO) (submitted pursuant to 28 U.S.C. § 1746 and under penalty of perjury) referencing this outstanding balance statement as the amounts owed by Soft-Tex (Doc. 11-1 at 3 (Decltn. Schock at ¶15)).  ASF's submission does not satisfy the majority of the requirements of Section 12-21-111 and ASF has not endeavored to assert or establish how the foregoing does.

Additionally, the Court's review of caselaw has not resulted in finding any cases in which a non-notarized Declaration, not filed with the Complaint, and not endorsed via same, sufficed under this statute -- but instead, the contrary.  See, e.g., Pileri Indus. Inc. v. Consolidated Indus. Inc., 740 So.2d 1108, 1110-1111 (Ala. Civ. App. 1999) (finding that an uncontested affidavit did not provide support of a judgment in a breach of contract action where the affidavit was not notarized -- Section 12-21-111 requires an affidavit and "that the affidavit be notarized, and Mr.

15

Pileri's affidavit was not[]"); Car Center, Inc. v. Home Indem. Co., Inc., 519 So.2d 1319, 1324-1325 (Ala. 1988) (on what appeared to be attempt by a defendant to prove the statement of an open account via Section 12-21-111, reversing a summary judgment which ruled in favor of the Defendant because, in part, Defendant "Home clearly did not meet the requirements of this statute ... Home failed to endorse on the complaint the fact that the account was verified by affidavit[]"). As such, ASF's second motion for default judgment as to this claim is **DENIED.**

    4.    **Account stated** (in personam)

As alleged in the Complaint, "Soft-Tex has expressly or impliedly acknowledged the correctness of the account balance owed to ASF and has agreed to pay the same ... [but] ... has failed or refused to make payment for all outstanding amounts owed." (Doc. 1 at 7). To the extent ASF endeavors to assert an account stated claim against Soft-Tex based on the transportation of goods/services contract, such is not viable as a matter of law. As summarized in Reddick by and through Sternberg v. Capouano, Beckman, Russell & Burnett, LLC, 2021 WL 5023969, *8-10 (11th Cir. Oct. 29, 2021):

> An account stated is a post-transaction agreement. It is not founded on the original liability, but is a new agreement between parties to an original account that the statement of the account with the balance struck is correct and that the debtor will pay that amount. It is as if a promissory note had been given for the balance due.
>
> A prima facie case on an account stated is made when the plaintiff proves (1) a statement of the account between the parties is balanced and rendered to the debtor; (2) there is a meeting of the minds as to the correctness of the statement; and (3) the debtor admits liability. The debtor's admission to the correctness of the statement and to his liabiilty [sic] thereon can be express or implied. An account rendered, and not objected to within reasonable time becomes an account stated, and failure to object will be regarded as an admission of correctness of the account. Once the plaintiff proves his prima facie case, the burden of proof shifts to the defendant.

16

> *Car Ctr., Inc. v. Home Indem. Co., Inc.*, 519 So. 2d 1319, 1322–23 (Ala. 1988) (emphasis omitted) (citations omitted) (quoting *Univ. of S. Ala. v. Bracy*, 466 So. 2d 148, 150 (Ala. Civ. App. 1985)); *see also Gilbert v. Armstrong Oil Co., Inc.*, 561 So. 2d 1078, 1081 (Ala. 1990); *Wilhite v. Beasley*, 497 So. 2d 103, 105 (Ala. 1986); *Martin v. Stoltenborg*, 142 So. 2d 257, 259 (1962). Alabama courts have held that a letter demanding payment of a simple amount of a claim renders an account, and it becomes an account stated when the debtor fails to object to the rendered account within a reasonable amount of time. *See Home Fed. Sav. & Loan Assoc. v. Williams*, 158 So. 2d 678, 682–83 (Ala. 1963); *Yarbrough v. Armour & Co.*, 15 So. 2d 281, 283 (Ala. 1943); *see also Williams*, 158 So. 2d at 683 (noting that "it is not essential that the account should be in writing" in order to create an account stated) ....
>
> ***
>
> .... *See Mobile Rug & Shade Co. v. Daniel*, 424 So. 2d 1332, 133 (Ala. Civ. App. 1983) ("[A]n account stated is an account balanced and rendered, with an assent to the balance, expressed or implied; so that the *demand* is essentially the same as if a promissory note had been given for the balance." (alteration in original) (emphasis added) (quoting *Sinclair Refining Co. v. Robertson*, 23 So. 2d 872, 873 (Ala. 1945))).

See also Compass Bank v. Limon, 464 Fed. Appx. 782, 785-786 (11th Cir. 2012) (same); Trimark Foodcraft, LLC v. Selma Dev., LLC, 2018 WL 5074686, *2 (S.D. Ala. Aug. 31, 2018) (same); Branch Banking & Trust Co. v. Howard, 2013 WL 951652, *4 at note 7 (S.D. Ala. Mar. 8, 2013) (same); University of South Alabama v. Brace, 466 So.2d 148, 150 (Ala.Civ.App.1985) (setting out the three (3) elements for account stated).

Presumably then, based on the elements *supra*, ASF endeavors to assert an account stated claim against Soft-Tex based on the Payment Agreement through which Soft-Tex is alleged to have acknowledged the correctness of the balance owed and agreed to pay the same but has failed or refused to make payment for all outstanding amounts. As noted *supra*, however, ASF cannot assert a new claim for breach of the Payment Agreement and/or for amounts owed under that Agreement due to said breach (as well as a breach of contract). As such, ASF's second motion for default judgment as to this claim is **DENIED.**

5. **Breach of contract** (in personam)

The elements for a breach of contract claim in Alabama are: 1) the existence of a valid contract; 2) plaintiff's performance under the contract; 3) defendant's nonperformance; and 4) damages. Dupree v. PeoplesSouth Bank, 308 So. 3d 484, 490 (Ala. 2020); Shaffer v. Regions Fin. Corp., 29 So. 3d 872, 880 (Ala. 2009).

As alleged in the Complaint, ASF's breach of contract claim against Soft-Tex is rooted on the allegation that ASF agreed to provide ocean and related transportation services for Soft-Tex's goods, in return for which Soft-Tex agreed to pay ASF freight charges, fees, storage charges, per diem charges, demurrage, chassis charges, and other charges.  (Doc. 1 at 2).  "ASF... and Soft-Tex .... entered into an agreement for ASF to provide international and domestic shipping and related transportation services for Soft-Tex's goods which are manufactured overseas."  (Doc. 11 at 1; Doc. 11-1 at 1 (Decltn. Schock at ¶4)). "Pursuant to the agreement ... ASF agreed to transport goods for Soft-Tex, and Soft-Tex agreed to pay ASF for its services."  (Doc. 1 at 5).  ASF adds that "[a]s part of the contract with ASF [*i.e.*, *that* contract]" Soft-Tex executed ASF's Credit Application Terms and Conditions and agreed "to abide by those terms in conjunction with ASF allowing Soft-Tex to pay for shipments on certain terms."  (Doc. 1 at 2).  However, "[i]n late 2021 and early 2022, Soft-Tex failed to pay ASF substantial amounts owed in connection with ASF's shipment of containers of goods for Soft-Tex from China to the United States."  (Id. at 3). The Court finds that these allegations support a finding that Soft-Tex breached the agreement to pay for services rendered by ASF.

As alleged by ASF in the Complaint, ASF is owed compensatory damages in the amount of $1,221,359 plus all amounts that were invoiced and that Soft-Tex failed to pay after March 31,

2022, plus fees and charges associated with Soft-Tex's goods, pre- and post-judgment interest in the amount of 25% per annum, and all costs of collection, including but not limited to ASF's reasonable attorneys' fees. (Doc. 1 at 5).

In support of the amounts currently owed, ASF has submitted the Credit Application and the Terms and Conditions, the Declaration of ASF representative Schock, and a summary printout of amounts owed as of June 2022; ASF seeks $1,611,075.06 which includes the requested attorneys' fees. (Doc. 11-5). The Credit Application provides that Soft-Tex "shall reimburse ASF for all reasonable costs incurred by ASF in collecting any late payments or enforcing any of the terms and conditions set forth herein, including, but not limited to, reasonable attorneys' fees and court costs." (Doc. 11-2 at 3 at ¶13). The Credit Application is also subject to the Terms and Conditions (Doc. 11-2 at 3 at ¶2), which in turn provides, in relevant part, as follows:

> In any dispute involving monies owed to Company, the Company shall be entitled to all costs of collection, including reasonable attorney's fees and interest at 25% per annum or the highest rate allowed by law, whichever is less unless a lower amount is agreed to by Company.

(Doc. 11-3 at 6-7 at ¶14).

### III.   Attorneys' Fees & Costs

In the motion for default judgment, based on the Credit Application, ASF seeks an award of **$38,696.71** in reasonable attorneys' fees and costs incurred due to enforcing its agreement with Soft-Tex. (Doc. 11 at 3). In support, ASF has submitted the Declaration of W. Craig Hamilton, counsel for ASF. (Doc. 11-6 (Decltn. W.C. Hamilton)). Per Hamilton, who is in his 23rd year of practice, the fees and costs were incurred based on his billing rate at $325/hour and the rate of his law firm partner Blair Newman, who is in his 16th year of practice, at $275hour. (Id. at 1-2 at ¶¶4-5)). No discussion of the lodestar is provided, and no billing records, or any documentation in

19

support for the amount sought (including any invoices or itemized statements related to costs) have been submitted with the Declaration.  As such, the Court is unable to discern what work was billed, by which attorney, at which hourly rate, what number of hours per which attorney, and/or what costs were incurred, to account for the $38,696.71 sum sought.  Accordingly, the request for attorneys' fees and costs is **DENIED** at this time.  ASF, however, is **GRANTED LEAVE** of Court to file, on or before **October 7, 2022**, a Supplement providing this information in support of its fees and costs request including a discussion of the calculation of the lodestar. Once the Court resolves the issue of attorneys' fees and costs, a ruling will issue with a corresponding Judgment.

IV.     **Conclusion**

Based upon the foregoing and as detailed *supra*, it is **ORDERED** that ASF's second motion for default judgment is **MOOT in part**, **GRANTED in part,** and **DENIED in part** as follows: **MOOT** as to the claim for breach of the Payment Agreement which has been **DISMISSED; DENIED** as to the claims for *quantum meruit*, suit on verified account, and account stated; **GRANTED** as to the breach of contract claim.  The award amount will be determined once the attorneys' fees/cost issue is resolved.  ASF is **ORDERED** to also submit a proposed judgment in accordance with this order.

**DONE** and **ORDERED** this the **23rd** day of **September 2022.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**